IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHARLES HODGES, IV,

       Plaintiff,

vs.                              CASE NO. 1:16-cv-258-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Period of Disability and Disability Insurance Benefits

pursuant to Title II of the Social Security Act ("the Act"). (ECF No. 1.) The

Commissioner has answered, ECF No. 8, and both parties have filed briefs

outlining their respective positions. (ECF Nos. 16, 17.) For the reasons

discussed below, it is recommended that the Commissioner's decision be

affirmed.

_____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill
should be substituted for former Acting Commissioner of Social Security, Carolyn W.
Colvin, as Defendant in this matter. The Clerk is directed to correct the docket
accordingly.

# I. PROCEDURAL HISTORY

Plaintiff filed his Title II application on September 28, 2012, alleging a disability onset date of August 21, 2012. (R. 150–51.) Plaintiff originally alleged that he could no longer work due to seizures, a broken left arm, and depression. (R. 167.) His application was denied initially and upon reconsideration. (R. 93–103, 105–10.) On October 31, 2014, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 11–27.) The Appeals Council denied Plaintiff's request for review. (R. 1–7.) On July 18, 2016, Plaintiff filed the instant appeal. (ECF No. 1.)

# II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[2] The impairment

must be severe, making Plaintiff unable to do his previous work, or any

other substantial gainful activity which exists in the national economy. 42

U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20

C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the

existence of a disability as defined by the Social Security Act. *Carnes v.*

*Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is

working at a substantial gainful activity, he is not disabled. 20 C.F.R. §

404.1520(b). Second, if a claimant does not have any impairment or

combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe

impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a

claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).

Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a

---

[2] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

claimant's impairments (considering his residual functional capacity

("RFC"), age, education, and past work) prevent him from doing other work

that exists in the national economy, then he is disabled. 20 C.F.R. §

404.1520(f).

## III.  SUMMARY OF THE RECORD

Plaintiff's medical records cover the time period from 2010 to 2014

and are from the Pinellas County Health Department, Community Health

Centers of Pinellas, Shands, and West Coast Nueorolgy, as well as mental

health records from Meridian Behavioral Healthcare and Directions for

Living. Because Plaintiff's arguments on appeal include whether Plaintiff

had a stroke, the severity of his mental health impairments, and the effects

of non-convulsive seizures, the relevant portions of the medical record are

summarized below.

## A.  Medical Evidence

In August 2012 and early 2013 Plaintiff visited Shands after losing

consciousness and injuring his left arm and again when he had a

laceration on the side of his head following a seizure. The causes may

have been alcohol withdrawal or sleep deprivation, respectively. On

examination there were no neurovascular deficits. He was cooperative and

oriented, and he answered questions appropriately. He also had normal

mood and affect. His reading, writing, comprehension, concentration, and

memory were intact. His cranial nerves were notable only for saccadic

interruptions and few beats of endgaze nystagmus. (R. 263–315, 344–73.)

Later in 2013, Plaintiff visited the Community Health Centers of

Pinellas. His diagnoses included anxiety and depression as well as

seizures. His neurological exam findings were normal, and he did not

complain of any decrease in his ability to concentrate. (R. 418–29.)

In November 2013, Dr. Patel of West Coast Neurology provided a

neurological opinion of Plaintiff. The neurological examination revealed that

Plaintiff was alert, oriented, and cheerful. His speech and overall memory

status were good. An examination of all of his cranial nerves resulted in

normal findings. An MRA and MRI of Plaintiff's brain showed microvascular

angiopathy[3] changes and multiple lacunar infarcts,[4] as well as some

---

[3] Angiopathy is defined as "[a]ny disease of the blood vessels or lymphatics." *40590 angiopathy*, *Steadmans Medical Dictionary* (updated Nov. 2014).

[4] An infarct is "[a]n area of necrosis resulting from a sudden insufficiency of arterial or venous blood supply." *443430 infarct, Steadmans Medical Dictionary* (updated Nov. 2014). Lacunar infarcts are "small deep infarcts that result from occlusion of a penetrating artery" and they "account for about a quarter of all ischaemic strokes." *Long-Term Prognosis After Lacunar Infarction*, U.S. National Library of Medicine, National Institutes of Health, www.ncbi.nlm.nih.gov/pubmed/12849212 (Apr. 2003).

sinusitis. The MRA and MRI results, however, did not result in any change in the course of Plaintiff's treatment and were not mentioned elsewhere in Dr. Patel's treatment notes upon followup. (R. 374–79.)

When Plaintiff returned to Dr. Patel multiple times in 2014 for followup, there was no mention of a stroke, only seizures, anxiety, depression, syncope, and bipolar disorder. Plaintiff's complaints stated that his symptoms were at times improving and at other times worsening, but there were no new symptoms mentioned. Plaintiff was alert and oriented with clear speech, and his physical examinations were normal. Dr. Patel's opinion regarding Plaintiff's limitations included only the following recommendation: "Do not operate any machinery, work/play in dangerous places, with dangerous surfaces or objects in or around water while under the influence of medications, with history of seizures or lacking mental clarity." (R. 377, 402–06, 460–63, 498–99.)

Plaintiff also visited Pinellas County Health Department in 2014. Plaintiff stated that he had a history of seizures and a CVA due to seizure previously. Plaintiff stated that he has seizures monthly. His other complaints included depressive disorder, bipolar disorder, and anxiety. His physical examinations, however, yielded normal results. (R. 433–40,

482–94.)

With regard to Plaintiff's mental health, Plaintiff visited Meridian Behavioral Healthcare in 2010 and Directions for Living in 2013 and 2014. Plaintiff complained of anxiety and depression. Examinations revealed that Plaintiff's cognition was grossly intact, his thought process was linear and organized, and his speech was normal. His mental status was unremarkable. (R. 249–60, 381–98, 444–56.)

Plaintiff at times discussed his physical health with his counselors. He told his counselor in 2013 that his medication was helping with his seizures, but in 2014 he stated that he had been experiencing seizures again. He also stated that his neurologist informed him that he had a stroke following one of his seizures. Plaintiff, however, also informed his counselor that he is no longer bed-ridden for several days four to six times a month and that his medications are helping, although he said he still experiences being in a daze for days. (R. 249–60, 381–98, 444–56.)

## B. Opinion Evidence

State agency medical consultants completed an RFC assessment form for Plaintiff initially and on reconsideration. Both times the physical RFC stated that Plaintiff had exertional limitations, including only

occasionally lifting and carrying 20 pounds and frequently carrying 10

pounds. Further, Plaintiff could sit, stand, and walk for about 6 hours in an

8-hour workday. Plaintiff was also limited in his left upper extremity and

had some environmental limitations. (R. 78–79, 90–94.)

The evaluation on reconsideration also included a few differences.

The assessment stated that Plaintiff's reports of severe impairments in

memory and concentration were not supported by the objective medical

evidence. Additionally, Plaintiff's allegations were more severe than his

overall function indicates. The examiner concluded that Plaintiff was

capable of light work.  (R. 90–94.)

With regard to Plaintiff's mental RFC, the state agency examiner

found that Plaintiff had some limitations. He was also able to remember

and understand instructions as well as make simple work-related decisions

and sustain work activities. The examiner found that Plaintiff may lack the

ability to plan independently and may experience socially inappropriate

behavior. However, Plaintiff's mental limitations were only mild to

moderate. His RFC for many tasks is largely retained from a psychological

perspective. Overall, Plaintiff was capable of light work. (R. 80–83.)

In December 2012, Dr. William Beaty, a licensed psychologist,

performed an consultative psychological evaluation of Plaintiff.  Aside from Plaintiff's mood and affect, his mental status examination was normal, and Dr. Beaty estimated an average to high average cognitive ability. His diagnosis included major depressive disorder. However, rather than making a determination as to Plaintiff's work-related abilities, Dr. Beaty simply quoted Plaintiff's subjective statements about his ability. (R. 321–23.)

In July 2014, Dr. Thomas Beaman performed a consultative physical examination of Plaintiff. Plaintiff stated that this last convulsive-type seizure was six months prior to the examination, but he said that once a month he is so dizzy that he cannot get out of bed. Plaintiff's neurologic and mental status examinations resulted in normal findings. Dr. Beaman found that there was a history of seizures and dizziness, but that his dizziness was not exhibited during the examination. Further, although Plaintiff stated a history of CVA, Dr. Beaman found that there was no mention of CVA in his past history. Dr. Beaman also noted a history of headaches, depression, PTSD, and bipolar disorder. (R. 477–79.)

Dr. Beaman opined that Plaintiff could continuously lift and carry up to 20 pounds and occasionally lift and carry up to 50 pounds. Plaintiff could

lift more than that with his right arm but never lift or carry more than that with his left. In an eight-hour workday, Plaintiff could sit and stand for eight hours and walk for two hours. Plaintiff had no limitations for the use of his hands or feet. Plaintiff was, however, limited to never balancing or climbing stairs, ladders, ramps, or scaffolds, and Plaintiff could only frequently stoop, kneel, crouch, and crawl due to his history of seizures and issues with balance and dizziness. Plaintiff also could not be exposed to unprotected heights, moving mechanical parts, and operating a motor vehicle due to his history of seizures. (R. 470–75.)

## C.  Hearing Testimony

At his hearing on August 21, 2014, Plaintiff was 37 years old. Plaintiff alleged that he suffers from the following severe impairments: seizure disorder, a status post fracture of the left elbow, status post of stroke, headaches, thyroid disorder, major depressive disorder, bipolar disorder, and anxiety disorder. (R. 65.)

He testified that he has seizures once every two weeks. He said that his medication prevents him from having convulsions, but he loses track of time for between one and seven days. When Plaintiff has a seizure, he stays in bed for the entire duration of it. Plaintiff said he is on multiple

medications for his seizures. (R. 42, 44, 51.)

With regard to Plaintiff's mental health, he testified that his medication helps with his depression but that he is diagnosed bipolar. He said that he has sleeping problems as a result. Plaintiff said he also experiences anxiety daily and has panic attacks once or twice a month for about an hour, which sometimes involve mood swings. He also has difficulty concentrating on more than one task. Plaintiff also said he has trouble with his short-term memory almost daily and that sometimes he experiences dizziness and balance issues. (R. 47–50, 56-57.)

Plaintiff testified that his neurologist says he is very limited with regard to social activities. He said that due to his brain damage, he should not take public transportation and cannot drive. But he does talk with friends on the computer and goes to the library occasionally. Plaintiff also used to socialize at a local pizza restaurant with friends. (R. 50, 58.)

Plaintiff also said that his doctors have told him that he has had a stroke that caused brain damage. Plaintiff also said that his doctor told him that he will probably have another stroke, and he might not wake up from it. Plaintiff said his seizures caused the stroke, but that his doctors cannot figure out why he has seizures. (R. 55, 66.)

## D.  The ALJ's Findings

The ALJ found that Plaintiff has the following severe impairments: seizure disorder, status post ORIF of a left olecranon fracture, status post CVA, headaches, mood disorder, and anxiety disorder. The ALJ also noted that although there is a history of alcohol abuse, nothing in the record indicates that this caused Plaintiff significant limitations. Further, the ALJ stated that despite Plaintiff's complaints of back pain, the record does not support that Plaintiff has a medically determinable back impairment. The ALJ also found that Plaintiff does not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.[5] (R. 16–19.)

After considering the entire record, the ALJ found that Plaintiff has the following RFC: Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b), except with limitations. Plaintiff can only occasionally push/pull with the non-dominant left upper extremity; occasionally climb ramps or stairs and balance; frequently stoop, kneel, crouch, and crawl;

---

[5] When discussing the severity of Plaintiff's mental impairments, the ALJ found that Plaintiff had only mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace. Further, the ALJ found that there was no evidence of any episodes of decompensation for an extended duration. (R. 18.)

never climb ladders, ropes, or scaffolds; only frequent bilateral handling and fingering with the non-dominant left upper extremity; avoid concentrated exposure to extreme temperatures, excessive vibration, and irritants, such as fumes, odors, dust, gases, and poorly ventilated areas; avoid all exposure to heavy machinery, unprotected heights, commercial driving, and work near bodies of water; and work is limited to simple routine repetitive tasks in a low stress job, defined as having only occasional decision-making and changes in the work setting. (R. 19.)

With regard to Plaintiff's credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible. The ALJ instead found that the objective evidence did not support many of Plaintiff's complaints, such as the frequency of his seizures or his alleged dizziness and balance issues, and that the clinical findings and physical examinations of record were largely unremarkable. Further, the ALJ noted that Plaintiff's daily activities were not limited to the extent one would expect for someone complaining of Plaintiff's disabling symptoms and limitations. (R. 20–25.)

Although the ALJ found that Plaintiff was unable to perform any past relevant work, the ALJ did find that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. These jobs include a non-check cashier, cafeteria attendant, and counter clerk. Further, even if Plaintiff was reduced to sedentary limits, there were three other jobs that Plaintiff could perform. Therefore, the ALJ concluded that Plaintiff has not been under a disability from August 21, 2012, through the date of the ALJ's decision. (R. 26–27.)

## IV.  DISCUSSION

Plaintiff raises one primary argument on appeal. Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff never had a cardiovascular accident[6] or stroke because the record includes a November 2013 MRI, which the doctor found "remarkable for microvascular angiopathy and multiple lacunar infarcts." Additionally, without elaboration or any support from the record, Plaintiff says that the Court should note that the ALJ ignored Plaintiff's severe chronic mental

---

[6] Contrary to Plaintiff's representation, a stroke is actually a cerebrovascular accident ("CVA"), not a cardiovascular accident. J. Stanley McQuade, *§ 7:105. Cerebrovascular accidents (CVAs)—Strokes, Medical Information Systems for Lawyers.*

health impairments by disregarding the opinions of the consulting psychologist and state agency reviewing psychologist. Further, Plaintiff states "in passing" (and without any citation to evidence in the record supporting the assertion) that based on Plaintiff's testimony, his non-convulsive seizures would cause him to miss two or more days of work per month, resulting in termination from full time employment. For the reasons discussed below, the Court finds that each of these arguments is without merit and unsupported by the record.

Plaintiff's main argument is that the ALJ erred in finding that Plaintiff never had a cardiovascular accident or stroke. Plaintiff says that the record evidence includes an MRI of the brain dated November 12, 2013, which was "remarkable for microvascular angiopathy and multiple lacunar infarcts." Further, with regard to this MRI, Plaintiff alleges that because Dr. Beaman, Plaintiff's consultative examiner, concluded that there was no history of CVA documented in Plaintiff's history, the Social Security Administration must have withheld the information from Dr. Beaman. As a result, Plaintiff says Dr. Beaman's opinion is flawed and the ALJ's reliance on that opinion is a denial of due process. (ECF No. 16 at 16–19.)

Regardless of whether Plaintiff had a stroke, Plaintiff's argument

completely misses the point because it does not address Plaintiff's ability to work. "Disability" is not just having a severe impairment; it is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

Plaintiff has failed to advance any argument or cite to anything in the record demonstrating that Plaintiff had any functional limitations as a result of a stroke that prohibit him from substantial gainful activity. "[T]he mere existence of . . . impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's [RFC] determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986) ("'[S]everity' of a medically ascertained disability must be measured in terms of its effect upon ability to do work.")). Rather than reflecting what Plaintiff says, the record reflects that the ALJ properly considered the 2013 MRI as well as the opinions of Plaintiff's neurologist and other examiners in determining Plaintiff's RFC, which included assessing the effect of a past

stroke on Plaintiff's ability to work.

In addressing Plaintiff's allegation of stroke (cerebrovascular accident or "CVA"), the ALJ noted that this was not objectively documented in the record and that there is no clear evidence that a significant CVA actually occurred. The records during Plaintiff's overnight stay in February 2013 do not include a diagnosis of a stroke. Additionally, despite the November 2013 MRI results that revealed microvascular angiopathy changes and multiple lacunar infarcts, Plaintiff's neurological office visit notes show that there has never been a diagnosis of CVA or transient ischemic attack ("TIA") in the medical history or under the diagnostic impressions. Lastly, when the physical examiner reviewed Plaintiff's medical records, he did not note any history of CVA. (R. 21.)

Notwithstanding the lack of medical evidence that Plaintiff suffered a CVA or TIA, the ALJ still afforded Plaintiff the benefit of the doubt regarding his allegations of a stroke and included "status post CVA" as one of Plaintiff's severe impairments. Thus, contrary to Plaintiff's argument, the ALJ included a past stroke when determining Plaintiff's RFC. (R. 17.)

When determining Plaintiff's RFC, the ALJ found that neither the records from Plaintiff's neurologist (Dr. Patel) and the Health Department

nor the most recent consultative physical exam reveal any cognitive limitations resulting from a stroke or otherwise. The ALJ further found that the records from Plaintiff's neurological office visits show normal exam findings. Plaintiff continued to see the doctor who performed the MRI, and there was never a change from conservative treatment nor was there ever any evidence of cognitive dysfunction noted during any exam. Further, all of Plaintiff's mental status exams were normal for speech and cognitive functioning. (R. 14, 21.) Thus, even if Plaintiff had a stroke, there is no medical evidence in the record showing that the stroke functionally prevents Plaintiff from performing work related activities.

Plaintiff then goes on and makes the conclusory argument that Dr. Beaman's consultative physical examination opinion is "open and obviously flawed" because it did not include a history of CVA, causing the ALJ's reliance on this opinion to be a denial of due process. And without any evidence to support his assertion Plaintiff further alleges that the Social Security Administration must have neglected to inform Dr. Beaman of the November 2013 MRI results. (ECF No. 16 at 17.) These arguments offer nothing to support reversal of the ALJ's decision.

To start, Plaintiff has failed to point to any evidence suggesting that

the Social Security Administration kept the 2013 MRI from Dr. Beaman.

The fact that Dr. Beaman did not specifically say in his opinion that he

reviewed the 2013 MRI does not mean that he was unaware of it. The only

document Dr. Beaman specifically referenced was a CT scan, but he

stated that he reviewed all of the paperwork provided.  Notably, there are

no records from any of Plaintiff's doctors or examiners, which include a

notation that Plaintiff has a history of CVA.  Thus, Dr. Beaman's statement

that there was no evidence of a history of CVA was not incorrect.  In short,

Plaintiff's unsupported and conclusional allegation that the Social Security

Administration withheld the MRI from Dr. Beaman has no merit.

Further, other than arguing that Dr. Beaman's opinion was flawed

Plaintiff offers nothing to support his assertion. In addition to reviewing all

of the medical records he was provided, Dr. Beaman also performed a

consultative physical exam on Plaintiff. As part of the consultative

examination, Dr. Beaman performed both a neurologic and mental status

exam, both of which resulted in normal findings. Dr. Beaman found that

Plaintiff's sensory examination was within normal limits, Plaintiff's speech

was clear and easily understood, there was no evidence of motor deficit

and there was no dizziness. Overall, Dr. Beaman's consultative exam was

unremarkable.

Based upon his review of Plaintiff's medical records and the results of the examination, Dr. Beaman opined as to Plaintiff's RFC (R. 478–79.) The ALJ determined that Dr. Beaman's opinion was entitled to considerable weight. The ALJ further found that Dr. Beaman's opinion was more limiting than the ALJ's RFC determination in some respects and less limiting in others. The ALJ determined that additional limitations were necessary due to Plaintiff's history of a left upper extremity fracture and his alleged headaches, but based upon the results of other examinations declined to include Dr. Beaman's limitation that Plaintiff should not climb ramps and stairs or balancing. (R. 24–25.)

Plaintiff fails to point to any other medical evidence in the record that discredits Dr. Beaman's opinion or the ALJ's conclusion that Dr. Beaman's opinion is entitled to considerable weight. Further, although the ALJ afforded Dr. Beaman's opinion considerable weight, the ALJ relied upon the record as a whole—including other opinions about which the ALJ articulated the weight he gave to each opinion—in making the RFC determination and finding that Plaintiff was not disabled. *See Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 904–05 (11th Cir. 2013)

(unpublished) (finding that despite Plaintiff's concerns regarding the ALJ's

consideration of a doctor's opinion, "the ALJ was not limited to [the

doctor's] opinion or his clinical findings in making her RFC assessment.

Rather, the ALJ considers all the relevant evidence in making an RFC

assessment.")

Because Plaintiff has cited to nothing in the record (apart from the

2013 MRI) to show that substantial evidence does not support the ALJ's

RFC determination and points to nothing in the record supporting his

argument that Plaintiff suffers greater work-related limitations from the

limitations in the ALJ's RFC assessment, Plaintiff has failed to show error

on the part of the ALJ.

Lastly—and without explanation or elaboration—Plaintiff argues that

the ALJ ignored Plaintiff's severe chronic mental health impairments by

disregarding the opinions of consultative psychologists. (ECF No. 16 at

17.) The record provides no support for this argument. Rather, the record

shows that the ALJ found that Plaintiff had two mental health

impairments—mood disorder and anxiety disorder—discussed and

weighed the opinion evidence, including the opinions of the consultative

psychologist, and addressed the mental limitations in Plaintiff's RFC. (R.

17–27.)

With regard to Plaintiff's mental health, the ALJ noted that the medical records contain diagnoses of depression and bipolar disorder. The ALJ appropriately recognized Plaintiff's mental health impairments by using the broader diagnosis of mood disorder. In analyzing Plaintiff's mental health records, the ALJ noted that Plaintiff's mental status exams were largely unremarkable and showed that Plaintiff had normal attention, concentration, and memory. The mental health records also noted that Plaintiff had normal or euthymic mood and appropriate affect during examinations. Accordingly, consistent with this evidence the ALJ did not find anything in Plaintiff's mental health records which showed that Plaintiff had more severe limitations as a result of his mental health impairments from those included in the RFC assessment. (R. 23.)

Further, the ALJ specifically addressed Plaintiff's consultative psychological examination by Dr. Beaty, which was also largely unremarkable. The report of Dr. Beaty's consultative examination noted that Plaintiff's thought process was intact, there was no significant attention impairment, his memory was intact, and he had estimated average to high average cognitive ability. The ALJ afforded Dr. Beaty's opinion no weight

because the opinion was based upon a recitation of Plaintiff's subjective responses regarding his ability to work and function rather than based upon the objective findings of the exam. (R. 23.)

The ALJ also discussed the state agency psychological mental assessment. The sate agency psychologist concluded that Plaintiff could understand and remember instructions, make simple work-related decisions, sustain work activities, and may be stress sensitive. The ALJ found that the assessment was partially consistent with the rest of the record and, therefore, was entitled to some weight. The ALJ also noted that there was another mental health assessment that found Plaintiff had no severe mental impairments. Nonetheless, the ALJ found that more weight should be given to the more limiting assessment, affording Plaintiff the benefit of the doubt. (R. 25.)

The fact that the ALJ limited the weight given to the opinions following the psychological consultative examinations—and explained his reason for the weight given to each—does not support Plaintiff's assertion that the ALJ disregarded the opinion of the psychologists or Plaintiff's argument that the ALJ completely ignored Plaintiff's mental health impairments. In sum, Plaintiff has not provided any argument or citation to

the record supporting his position that his RFC should be more limited due to his mental health impairments.

Lastly—again without elaboration or citation to the record—Plaintiff says that Plaintiff's non-convulsive seizures would cause Plaintiff to miss two or more days of work per month, which would result in termination from full-time employment. (ECF No. 16 at 18–19.)  There is no support for this argument.

The ALJ specifically addressed Plaintiff's non-convulsive seizures in determining Plaintiff's RFC. The ALJ noted that although Plaintiff testifies that he suffers from non-convulsive seizures every two weeks which cause him to lose track of time and remain in bed for one to seven days, Plaintiff's therapy notes evidence that Plaintiff's medication is effective and that Plaintiff is no longer bed ridden. The ALJ also concluded that the record does not support Plaintiff undocumented assertions that these events occurred. For example, the ALJ noted that Plaintiff did not complain about these events to his consultative examiner or to his treating neurologist as late as August 2014. Overall, the ALJ found that the evidence of record fails to support Plaintiff's claim regarding the severity or frequency of his seizures. (R. 20.)

Because Plaintiff has pointed to nothing in the record supporting his

undocumented position that he has severe limitations from his non-

convulsive seizures, the ALJ did not err in discrediting Plaintiff's complaints

about the severity and frequency of his non-convulsive seizures or in

determining Plaintiff's RFC.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** on the 15th day of June 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.